The **GAMBRINUS COMPANY,**
Appellant

v.

**GALVESTON BEVERAGE, LTD.,** Appellee.

No. 04–07–00265–CV.

Court of Appeals of Texas, San Antonio.

May 14, 2008.

Karen Monsen, James L. Walker, Patrick B. Tobin, Jackson Walker, L.L.P., San Antonio, TX, Michael A. Moses, Siegel, Moses & Schoenstadt, Chicago, IL, for Appellant.

C. Charles Dippel, Paul S. Radich, Andrews Kurth LLP, Houston, TX, Luther H. Soules, III, Soules & Wallace, San Antonio, TX, for Appellee.

Sitting: CATHERINE STONE, Justice, SANDEE BRYAN MARION, Justice, PHYLIS J. SPEEDLIN, Justice.

## OPINION

PHYLIS J. SPEEDLIN, Justice.

The Gambrinus Company appeals the trial court's final judgment granting summary judgment in favor of Galveston Beverage, Ltd., and awarding approximately $1.16 million in damages to Galveston Beverage, plus attorney's fees. Because we conclude that Galveston Beverage's suit is barred by limitations, we reverse the trial court's judgment and remand the cause to the trial court with instructions to render judgment dismissing Galveston Beverage's claim, and to award Gambrinus its reasonable attorney's fees and costs of court.

FACTUAL AND PROCEDURAL BACKGROUND

This appeal arises out of a suit for damages brought under the Beer Industry Fair Dealing Law (the "BIFDL"). *See* TEX. ALCO. BEV.CODE ANN. §§ 102.71–.81 (Vernon 2007). The Gambrinus Company manufactures or imports three lines of beer: Spoetzl (Shiner and Pete's); Moosehead (imported from Canada); and Modelo (imported from Mexico). Under the three-tier system of alcoholic beverage distribution in Texas, Gambrinus is permitted to sell its products only to independent licensed wholesalers, who then sell to licensed retailers, who ultimately sell to consumers. TEX. ALCO. BEV.CODE ANN. §§ 102.01, 102.07 (Vernon 2007 & Supp. 2007); *Dickerson v. Bailey*, 336 F.3d 388, 397 (5th Cir.2003) (Texas Alcoholic Beverage Code creates three-tier system that strictly separates ownership and operations between manufacturers, wholesalers, and retailers, and strictly prohibits vertical integration of the manufacture, distribution, or sale of alcoholic beverages). The purpose of this tri-level division is to "aid Texas in the regulation and control of alcohol consumption, and 'prevents companies with monopolistic tendencies from dominating all levels of the alcoholic beverage community.'" *Dickerson*, 336 F.3d at 397.

Beginning in 1992, Galveston Beverage, a wholesaler and distributor, had a written distribution agreement with Gambrinus giving it the exclusive right to distribute all three of the Gambrinus beer lines to retailers in Galveston County, Texas. During 1998, Anheuser–Busch, an importer/manufacturer in competition with Gambrinus, introduced a new alcoholic beverage named Tequiza to compete with Corona, which is part of Gambrinus's Modelo line. Tequiza showed great initial success during 1998–1999, but its sales began to decline in mid–1999 and 2000. In November 1998, Dienst Distrib-

uting Co., another distributor in Galveston County, made an offer to purchase all of Galveston Beverage's distribution rights in Galveston County for $1.4 million. In April 1999, Dienst increased its offer to $2.4 million. On May 12, 1999, Del Papa Distributing Co., an Anheuser–Busch distributor, offered to pay Galveston Beverage $1.16 million for the Galveston County distribution rights to the Modelo line *only.* Five days later, Dienst reduced its purchase offer to $2.2 million, and excluded the Modelo line from the revised offer. On May 19, 1999, Galveston Beverage notified Gambrinus in writing of the offer from Del Papa to purchase its distribution rights for the Modelo line. In a June 1, 1999 letter to Galveston Beverage, Gambrinus's Division Director, Michael Chaffin, expressed the company's concerns about the Del Papa offer, stating that Gambrinus wanted to maintain the "synergy" of keeping its three brand lines together, and expressing its concern that Del Papa was a distributor of Anheuser–Busch's Tequiza which was "in an aggressive market battle specifically targeting" Corona. Galveston Beverage responded that same day that the Del Papa deal was a good offer, and stated that it planned to sell the Modelo rights to Del Papa unless it received a matching offer. On June 10, 1999, Galveston Beverage's counsel requested a response from Gambrinus about the proposed sale to Del Papa, and threatened to sue Gambrinus under the BIFDL for failure to reasonably approve the transfer. Gambrinus responded by letter dated June 10, 1999, reiterating the same two concerns stated in its June 1 letter, and threatening to deem the Gambrinus products "abandoned" if Galveston Beverage proceeded with the Del Papa sale.

During the last two weeks of June 1999, Dienst and Galveston Beverage negotiated the sale of the Modelo line to Dienst for

$723,000, thereby keeping all three Gambrinus lines together with the same distributor in the Dienst deal. On June 30,-1999, Dienst submitted a final letter of intent to purchase all of Galveston Beverage's assets, including the distribution rights for all three Gambrinus lines, for a total of $3.2 million. The transfer was approved by Gambrinus. An asset purchase agreement between Dienst and Galveston Beverage was executed on August 20, 1999, pursuant to which Galveston Beverage transferred all of its assets, including all of its Gambrinus distribution rights, for $3.2 million plus an additional $1.1 million over five years for a lease of the premises. Subsequent to the consummation of the sale, Galveston Beverage ceased to be an operating company and let its distributor's license expire in 2000.

In April 2003, Galveston Beverage sued Gambrinus alleging that it had unreasonably refused to approve Del Papa's 1999 proposed purchase of the Modelo distribution rights, in violation of section 102.76 of the BIFDL. TEX. ALCO. BEV.CODE ANN. § 102.76(a) (Vernon 2007) (providing that "[n]o manufacturer shall unreasonably withhold or delay its approval of any assignment, sale, or transfer of . . . all or any portion of a distributor's assets . . ., including the distributor's rights and obligations under the terms of an agreement whenever the person or persons to be substituted meet reasonable standards imposed not only upon the distributor but upon all other distributors of that manufacturer of the same general class . . ."). In its suit, Galveston Beverage sought to recover the "fair market value" of the Modelo distribution rights in Galveston County based on Del Papa's un-approved offer of $1.16 million. See TEX. ALCO. BEV.CODE ANN. § 102.77(a) (Vernon 2007) (providing that "[a]ny manufacturer who . . . unreasonably withholds consent[,] to any assignment, transfer, or sale of a distributor's business assets . . . shall pay such distributor with whom it has an agreement . . . the fair market value of the distributor's business with relation to the affected brand or brands").

Gambrinus filed a plea to the jurisdiction challenging Galveston Beverage's standing, which was denied. Gambrinus then filed a summary judgment motion asserting the affirmative defense of limitations, which was also denied. Finally, Gambrinus and Galveston Beverage filed competing summary judgment motions on the BIFDL claim. After a hearing, the trial court denied Gambrinus's motion and granted summary judgment in favor of Galveston Beverage, awarding it approximately $1.16 million in damages plus attorney's fees. Gambrinus appealed, asserting several appellate issues. Because we conclude that Galveston Beverage's suit under the BIFDL was barred by limitations, however, we need only address the limitations issue.[2]

## STATUTE OF LIMITATIONS

 Gambrinus contends the trial court erred in denying its first summary judgment motion asserting that Galveston

---

2. Two *amicus curiae* briefs were filed on the issue of the proper measure of damages under the BIFDL. The Wholesale Beer Distributors of Texas asserts that the BIFDL sets forth a statutory "liquidated" damages scheme which entitles Galveston Beverage to receive the $1.16 million value of the Del Papa offer as its damages, despite its subsequent sale of the same assets to Dienst. On the other hand, The Beer Institute, a national trade association of brewers, importers and suppliers, asserts the trial court's judgment improperly awards Galveston Beverage more than its actual damages, which its contends is the proper measure of damages under the BIFDL, and amounts to an award of punitive damages. Given our disposition of the appeal on limitations, we need not address the damages issue.

Beverage's suit under the BIFDL was barred by limitations.[3] Specifically, Gambrinus asserts that a claim for violation of the BIFDL is more analogous to a tort-based cause of action than a breach of contract action, and thus Galveston Beverage's suit is barred by the two-year statute of limitations for tort claims. On appeal, we must determine whether Gambrinus conclusively established all the elements of the affirmative defense of limitations, and no genuine issue of material fact precluded summary judgment. TEX.R. CIV. P. 94, 166a(c); *Pustejovsky v. Rapid–American Corp.*, 35 S.W.3d 643, 646 (Tex.2000); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). We review the trial court's ruling on a summary judgment motion *de novo. Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). If a movant establishes an affirmative defense entitling it to summary judgment, the burden shifts to the non-movant to respond with reasons to avoid summary judgment and proof sufficient to raise a fact issue. *Stovall v. Mohler*, 100 S.W.3d 424, 426 (Tex. App.–San Antonio 2002, pet. denied). A party alleging the affirmative defense of limitations must conclusively establish the applicability of the particular statute of limitations, and the date on which limitations commenced to run. *Knott*, 128 S.W.3d at 220; *Burns v. Rochon*, 190 S.W.3d 263, 271 (Tex.App.–Houston [1st Dist.] 2006, no pet.).

We begin our analysis with the second element, and examine the record to determine whether Gambrinus established the date on which limitations began to run. Galveston Beverage filed suit against Gambrinus on April 29, 2003, alleging a single claim for violation of section 102.76(a) of the BIFDL. TEX. ALCO. BEV. CODE ANN. § 102.76(a). In its first amended petition, Galveston Beverage alleged that Gambrinus violated section 102.76(a) because it "unreasonably refused to approve of or consent to the [Del Papa] sale in June, 1999." There is no dispute, and the record clearly shows, that Gambrinus communicated its denial of consent to the Del Papa offer to Galveston Beverage in writing in June 1999. Indeed, in its first amended petition, Galveston Beverage judicially admitted that Gambrinus denied consent in June 1999. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex.2001) (assertions of fact, not pled in the alternative, in the live pleadings of a party constitute judicial admissions, and admitting party is barred from later disputing the admitted fact). Generally, a cause of action accrues, and the statute of limitations begins to run, when facts come into existence that authorize a plaintiff to seek a judicial remedy. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514–15 (Tex.1998) (cause of action against insurance broker accrued on date coverage was denied); *see also Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100 (Tex.1994) (cause of action under Insurance Code article 21.21 prohibiting unfair practices accrues on the date the insurer denies coverage); *see also Advent Trust Co. v. Hyder*, 12 S.W.3d 534, 538 (Tex.App.–San Antonio

---

**3.** Galveston Beverage initially responds that Gambrinus failed to preserve its limitations issue because it did not re-urge and seek a ruling on limitations in its *second* summary judgment motion. However, an appellate court reviews all summary judgment grounds on which the trial court ruled, whether granted or denied, and which are dispositive of the appeal. *Baker Hughes, Inc. v. Keco R.*

& *D., Inc.*, 12 S.W.3d 1, 5–6 (Tex.1999). The trial court's order denying Gambrinus's summary judgment motion based on limitations clearly indicates that the court fully considered, addressed, and ruled on the dispositive limitations defense raised in Gambrinus's first summary judgment motion. The issue was preserved for appeal.

1999, pet. denied) (noting that cause of action accrues, and limitations begins to run, when wrongful act causes a legal injury even if all the resulting damages have not yet occurred). Therefore, Galveston Beverage's claim under section 102.76(a) of the BIFDL accrued in June 1999, when it received written notice that Gambrinus would not approve the Del Papa sale, and the statute of limitations began to run at that time.[4]

■■■■ We next turn to the question of whether a tort-based two-year limitations period, or a contract-based four-year limitations period, applies to Galveston Beverage's claim under the BIFDL. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 16.003(a), 16.004(a)(3) (Vernon 2002 & Supp.2007). The BIFDL itself does not designate a limitations period for civil actions brought pursuant to section 102.79(a). TEX. ALCO. BEV.CODE ANN. § 102.79(a) (Vernon 2007) (providing that an "aggrieved manufacturer or distributor may maintain a civil action in a court of competent jurisdiction ..." for a violation of the Act). When a statute provides no express statute of limitations, courts look to analogous causes of action for which express limitations periods are prescribed, whether by statute or case law. *Kenneco*, 962 S.W.2d at 518. To determine which statute of limitations applies to a claim, a court examines the basic substance of the plaintiff's pleadings, rather than the mere form or nomenclature of the cause of action, to determine the nature of the claim. *Murphy v. Gruber*, 241 S.W.3d 689, 697 (Tex.App.–Dallas 2007, pet. filed); *Ho v. Univ. of Tex. at*

*Arlington*, 984 S.W.2d 672, 686 (Tex.App.–Amarillo 1998, pet. denied) (nature of claim is characterized by "determining the makeup of the remedy sought and by assessing which action ... would most amply redress the plaintiff").

Gambrinus argues that a two-year statute of limitations applies to a cause of action under BIFDL section 102.79(a) because it is most analogous to a tort-based cause of action like tortious interference with business relations. *See First Nat'l Bank of Eagle Pass v. Levine*, 721 S.W.2d 287, 289 (Tex.1986) (rejecting argument that four-year limitations period applies, and holding that two-year limitations period for trespass to property action applies to claim for tortious interference with business relations); *see also Snell v. Sepulveda*, 75 S.W.3d 142, 144 (Tex.App.–San Antonio 2002, no pet.) (two-year limitations period applies to tortious interference with contract claims). Gambrinus argues that, in asserting its BIFDL claim, Galveston Beverage effectively pled all the elements of a claim for tortious interference with prospective business relations: (1) a reasonable probability that the plaintiff would have entered into a contractual relationship; (2) an independently tortious or unlawful act by the defendant that prevented the relationship from occurring; (3) the defendant's conscious desire to prevent the relationship from occurring, or knowledge that the interference was substantially certain to occur as a result of the conduct; and (4) the plaintiff suffered actual harm or damages as a result of the defendant's conduct. *See Finlan v. Dallas Indep. Sch.*

---

4. In its brief, Galveston Beverage argues Gambrinus failed to conclusively establish the date of accrual of Galveston Beverage's claim because it did not attach any evidence to its summary judgment motion; however, Gambrinus's citation to Galveston Beverage's pleadings, which judicially admit the June 1999 date for Gambrinus's denial of consent,

is sufficient. *Brooks v. Ctr. for Healthcare Servs.*, 981 S.W.2d 279, 283 (Tex.App.–San Antonio 1998, no pet.) (citing *Tex. Dep't of Corrections v. Herring*, 513 S.W.2d 6, 9 (Tex. 1974)) (if plaintiff's pleadings contain judicial admissions negating the cause of action, summary judgment may be properly granted on the basis of the pleadings).

*Dist.*, 90 S.W.3d 395, 412 (Tex.App.–Eastland 2002, pet. denied). Moreover, Gambrinus asserts that because section 102.79(c) permits recovery under the BIFDL only for "actual damages" that supports the conclusion that the nature of a BIFDL claim is tort-based. *See* TEX. ALCO. BEV.CODE ANN. § 102.79(c) (Vernon 2007) ("[t]he prevailing party in any action under Subsection (a) of this section shall be entitled to actual damages, including the value of the distributor's business .... "); *see also Milam v. Nat'l Ins. Crime Bureau*, 989 S.W.2d 126, 131 (Tex.App.–San Antonio 1999, no pet.) (noting that actual damages or harm is one of the elements of tortious interference with prospective business relations).

On the other hand, Galveston Beverage argues its BIFDL claim is distinguishable from a tortious interference claim because it is a suit for statutory damages, not actual damages, and thus it is considered to be an "action for debt;" therefore, Galveston Beverage asserts its suit was timely filed within the four-year limitations period for contract-based actions. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3). In support of its position, Galveston Beverage relies on a line of cases decided under the former limitations statutes, repealed in 1985, which distinguished between two types of actions for debt—those where the indebtedness was not founded on a written contract, and those where the indebtedness was evidenced by a written contract. *See* TEX.REV.CIV. STAT. ANN. arts. 5526, 5527 [repealed by Acts 1985, 69th Leg., ch. 959, § 9(1), eff. Sept. 1, 1985]; *see also Rose v. First State Bank*, 122 Tex. 298, 59 S.W.2d 810, 811 (1933); *Kierstead v. City of San Antonio*, 636 S.W.2d 522, 527 (Tex.App.–San Antonio 1982), *rev'd in part on other grounds*, 643 S.W.2d 118 (Tex.1982); *Pounds Photographic Labs, Inc. v. Noritsu America Corp.*, 818 F.2d 1219, 1222 (5th Cir.1987); *Cornerstones Mun. Util. Dist.*

*v. Monsanto Co.*, 889 S.W.2d 570, 574–75 (Tex.App.–Houston [14th Dist.] 1994, writ denied); *Overton v. City of Houston*, 564 S.W.2d 400, 403 (Tex.Civ.App.–Houston [1st Dist.] 1978, writ ref'd n.r.e.).

Under our Supreme Court's more recent approach in determining limitations absent a prescribed statute of limitations, we focus on the language used in the plaintiff's petition to determine what act or conduct it is really complaining about on the part of the defendant in order to ascertain an analogous cause of action. *Kenneco*, 962 S.W.2d at 518; *Ho*, 984 S.W.2d at 686. The remedy sought by the plaintiff is only one factor that we consider in determining the nature of the plaintiff's claim. *Murphy*, 241 S.W.3d at 698. Here, the remedy sought by Galveston Beverage, "the cash equivalent of the fair market value of the affected brands at the time of Gambrinus's unlawful denial ... of consent," is not the dispositive factor; rather, we must determine the true nature of its claim. *See id.* The nature of its claim is clearly revealed by the language used in Galveston Beverage's amended petition, which shows that the conduct complained of is Gambrinus's failure to approve, and thus *interference* with, the prospective contractual relations between Galveston Beverage and Del Papa, *i.e.*, the consummation of the Del Papa offer to buy Galveston Beverage's distribution rights to Modelo. Galveston Beverage is not complaining that Gambrinus breached a duty under the distribution agreement, and is not suing for breach of the agreement or to enforce any provision of the agreement; rather, Galveston Beverage is complaining of Gambrinus's unreasonable failure to approve its proposed sale to Del Papa, which if true would constitute a violation of the beer industry's fair dealing law. *See Wal–Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex.2001) (holding that claim for

tortious interference with prospective business relations requires proof that defendant's conduct was independently tortious or unlawful); *see also Pecos Petroleum Co. v. McMillan,* No. 04–02–00187–CV, 2003 WL 1823389, at *2 (Tex.App.–San Antonio Apr. 9, 2003, no pet.) (mem. op.) (listing actual damages as element of tortious interference with business relations); *Baty v. ProTech Ins. Agency,* 63 S.W.3d 841, 860 (Tex.App.–Houston [14th Dist.] 2001, pet. denied) (same). In other words, Galveston Beverage is complaining of Gambrinus's conduct, independent of the terms of the distribution agreement, in refusing to approve Galveston Beverage's prospective business relations with Del Papa.[5]

We agree with Gambrinus that Galveston Beverage's BIFDL action alleging an unreasonable failure to approve its proposed transfer of assets is more analogous to a tort action, such as tortious interference with prospective business relations, than an action for debt; therefore, a two-year limitations period would logically apply. *See Levine,* 721 S.W.2d at 289 (noting that unfair competition and tortious interference with contract claims are torts governed by the two-year limitations period of section 16.003). Based on the foregoing analysis, we hold that the proper limitations period for a cause of action under section 102.79 of the BIFDL is two years. Because Galveston Beverage's suit was filed well over two years after Gambrinus's denial of consent to the Del Papa offer, it is barred by limitations. Therefore, the trial court erred in denying Gambrinus's summary judgment motion establishing the affirmative defense of limitations, and the trial court's judgment in favor of Galveston Beverage cannot stand.

## ATTORNEY'S FEES

 Finally, we address whether Gambrinus is entitled to recover its attorney's fees under the BIFDL. Whether attorney's fees are recoverable under a particular statute is a question of law which we review *de novo. Holland v. Wal–Mart Stores, Inc.,* 1 S.W.3d 91, 94 (Tex.1999). A party may recover attorney's fees only if authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310 (Tex.2006). Gambrinus asserts that, if it prevails on appeal, it is entitled to recover its attorney's fees and court costs under section 102.79(c) because it would become the "prevailing party" in this BIFDL suit. *See* TEX. ALCO. BEV.CODE ANN. § 102.79(c) (stating "[t]he prevailing party in any action under Subsection (a) of this section shall be entitled to actual damages, including the value of the distributor's business ... reasonable attorney's fees, and court costs"). Galveston Beverage disputes that interpretation of section 102.79(c), arguing that in order to be the "prevailing party" under subsection (c) a party must assert and prevail on a cause of action under subsection (a) of section 102.79. *See* TEX. ALCO. BEV.CODE ANN. § 102.79(a) (providing

---

5. We note that, as a "fair dealing" law which seeks to prohibit unfair practices in the beer industry, the BIFDL is analogous to the DTPA and former article 21.21 of the Insurance Code, both of which prohibit unfair and deceptive practices and apply a two-year statute of limitations. TEX. ALCO. BEV.CODE ANN. § 102.72 (Vernon 2007) (purpose of statute); TEX. BUS. & COM.CODE ANN. § 17.50 (Vernon Supp.2007); TEX. INS.CODE ANN. art. 21.21, § 16 [repealed and re-codified by Acts 2003, 78th Leg., ch. 1274 § 2, eff. April 1, 2005] (current versions at TEX. INS.CODE ANN. §§ 541.051, 541.056 (Vernon Pamphlet 2007)); *see Knott,* 128 S.W.3d at 221; *see also Kenneco,* 962 S.W.2d at 518 (noting that DTPA claim and § 16 claim under Insurance Code article 21.21 are analogous since both grant relief for unfair or deceptive practices, and two-year statute of limitations applies to both types of claims).

that an "aggrieved manufacturer or distributor may maintain a civil action" for a violation of the BIFDL). However, in the case relied on by Gambrinus, *Nauslar v. Coors Brewing Co.*, the court rejected that argument. In *Nauslar*, the court held the plaintiffs had no standing to sue under the BIFDL and awarded attorney's fees to the defendant, Coors Brewing Co., as the prevailing party even though Coors had brought no cause of action under section 102.79(a). *Nauslar v. Coors Brewing Co.*, 170 S.W.3d 242, 257–58 (Tex.App.–Dallas 2005, no pet.). The court reasoned that because the plaintiffs' claim was brought under subsection (a) of section 102.79, and the defendant Coors had prevailed due to the plaintiffs' lack of standing to bring that claim, subsection (c) made the award of attorney's fees to Coors mandatory. *Id.* We agree with the court's reasoning in *Nauslar*. Under the express language of subsection (c), it is mandatory that "the prevailing party in any action under Subsection (a)" be awarded its reasonable attorney's fees and court costs. Here, the prevailing party is the defendant, Gambrinus. *See id.* at 257; *EOG Resources, Inc. v. Killam Oil Co., Ltd.*, 239 S.W.3d 293, 304 (Tex.App.–San Antonio 2007, pet. denied) (noting that award of attorney's fees under Declaratory Judgment Act is not limited to the plaintiff or party seeking affirmative relief); *Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex.App.–Tyler 2002, no pet.) ("prevailing party" is one who is vindicated by successfully prosecuting or defending against an action).

### CONCLUSION

Based on the foregoing analysis, we hold that Galveston Beverage's suit is barred by limitations. Accordingly, we reverse the trial court's judgment in favor of Galveston Beverage, and remand the cause to the trial court with instructions to render judgment dismissing Galveston Beverage's claim, and to award Gambrinus its reasonable attorney's fees and costs of court pursuant to Tex. Alco. Bev.Code Ann. § 102.79(c).