**Reversed and Remanded and Opinion Filed January 9, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-12-01480-CV**

**PLANO AMI L.P., GHANI MEDICAL INVESTMENTS, INC., MCG GROUP, INC.,
MEHRDAD GHANI, NORTH DALLAS MEDICAL IMAGING, L.P.,
AND MICHAEL TABA, M.D., Appellants**

**V.**

**ERWIN CRUZ, M.D., Appellee**

**On Appeal from the 101st Judicial District Court
Dallas County, Texas
Trial Court Cause No. 10-16274-E**

## MEMORANDUM OPINION
Before Justices Francis and Lang-Miers[1]
Opinion by Justice Francis

This lawsuit involves the interests in two medical imaging centers, Plano AMI, L.P. and

North Dallas Medical Imaging, L.P. Dr. Erwin Cruz was involved in the formation of both

businesses with Mehrdad Ghani and Dr. Michael Taba. After NDMI was dissolved and Cruz

was expelled from Plano AMI, he sued his business associates and the other appellants alleging

claims for conversion, several breaches of fiduciary duty, and other wrongful conduct.

Following a two-week trial, the jury found in Cruz's favor on all claims and awarded actual and

punitive damages. After reducing the remaining damage awards to correspond with Cruz's

---

[1] Justice David Lewis was a member of the original panel and participated in the submission of this case, but he did not participate in the issuance of this opinion. *See* TEX. R. APP. P. 41.(b).

proportionate share and applying statutory caps on the punitive damages, the trial court rendered a $4.7 million judgment substantially in accordance with the jury's verdict.

The dispositive issues on appeal concern the correctness of two trial court rulings: one before trial and one after the testimony ended. First, the trial court determined on summary judgment that Cruz established as a matter of law that he was a limited partner in Plano AMI and so instructed the jury during the trial proceedings and in the jury charge. The second ruling came at the close of the evidence when the trial court granted Cruz's motion for instructed verdict on appellants' affirmative defense of waiver as it related to the dissolution of NDMI. Having reviewed the record, we conclude both rulings were error. Because the rulings impacted the entire presentation of the case, we conclude the rulings require that we reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Formation of NDMI and Plano AMI

In 2002, Mark Mendez, Ghani, and Cruz began discussions about forming a medical imaging business. Each would have a particular role: Cruz was to persuade his medical colleagues to refer patients to the center while Ghani and Mendez's roles were related to financial/construction and technical matters, respectively. Limited partnership units would be sold to physicians so they would have an incentive to refer patients.

The business was formed as NDMI in April 2002 and opened in the same building as Cruz's medical office. Mendez, Ghani, and Cruz each held a 30.33% limited partner interest. In addition, 1% was held by the corporate general partner, MCG Group, Inc., and the remaining 8% was held by the physician investors as limited partners. Taba was one of the physician investors.

Not long after the center opened, Cruz and Mendez got into a dispute, which ultimately led to Cruz and Ghani using the "bad boy" provision of the partnership agreement to expel

Mendez from NDMI. Mendez was paid nothing for his interest, which was split evenly between Cruz and Ghani. Mendez sued Cruz, Ghani, NDMI, and MCG in 2004 and settled the suit for $300,000.

Meanwhile, NDMI began to show a profit and, in 2004, Cruz, Ghani, and Taba created Ghani Medical Investments, Inc. (GMI) and opened a second imaging center, Plano AMI. GMI's sole asset was its interest in Plano AMI. The parties disputed the ownership structure of this entity. Specifically, Ghani and Taba asserted that 60% of Plano AMI was owned by the corporate general partner, GMI, while physician investors owned the remaining 40% interest as limited partners. Cruz, Ghani, and Taba, in turn, each held one-third of the GMI stock. According to Ghani, Cruz (a neurologist) and Taba (an orthopedic surgeon) preferred this structure because they did not want referring physician investors to know that they owned such large shares in the company. In contrast, Cruz claimed he, Ghani, and Taba each owned 24% interest in Plano AMI as limited partners; GMI owned 1% as the corporate general partner; and physician investors owned the remainder. Under either scenario, Cruz, Ghani, and Taba owned equal interest in Plano AMI, directly or indirectly.

### B. Management of the Centers

Ghani managed the day-to-day operations of both centers until a management company was hired in 2005. The management company was paid a fee of 10% of the gross billings, averaging $170,000 to $180,000 per year for each center. To save money, in mid-2006, the centers decided to use in-house management and Ghani was again in charge of the daily operation of each center; he believed he should be compensated. The NDMI partnership agreement precluded any such compensation, but the Plano AMI partnership agreement authorized fair and reasonable compensation to the general partner or its affiliates. Consequently, in November 2007, GMI authorized Ghani to draw a salary of $8,000 per month

for acting as president of GMI and managing Plano AMI. In addition, GMI authorized Taba to receive $2,500 per month for providing contrast services for patients. Evidence suggested the minutes documenting this authorization, however, were "backdated," and although they reflect Cruz was present at the meeting, Cruz denied approving any such salary, attending any meeting to discuss a salary, or knowing it had been awarded.

While managing the centers, Ghani hired his wife, Rona, to work as the marketing director. Rona earned a salary as well as commissions on MRI and CAT scan referrals. Cruz was aware Rona would be paid a monthly salary, but he denied knowing she was also being paid a commission. Evidence at trial suggested Ghani paid Rona commissions on referrals from doctors, whether she originated them or not. The record reflects Ghani paid Rona an average of $80,000 annually, but had never paid any marketing employee a similar amount. Moreover, in a matter unrelated to her compensation, evidence showed Rona forged the signature of a former employee, Kimberly Ault, on a non-compete agreement, which resulted in Ault's termination from a new job. Ault sued, and NDMI paid to settle the claim. Cruz testified he was never told about the Ault litigation, nor was he informed Ghani paid litigation expenses and the settlement from NDMI and Plano AMI funds. Cruz learned of the litigation during this lawsuit.

### C. Dissolution of NDMI

In the spring of 2007, Cruz, Taba, and Ghani began discussing the sale of the centers after hearing that hospitals were going to enter the market for imaging centers. They hired a broker to market the centers to potential buyers and set a $5.9 million asking price and a $4.5 million minimum price. Although they had several interested prospects, they did not receive a contract. One stumbling block appeared to be a requirement that potential buyers put up a $50,000 nonrefundable earnest money deposit as a condition to examine the centers' books.

–4–

Ultimately, no deal was made and in September 2008, much to Cruz's displeasure, Ghani terminated the broker's contract.

By that time, there were "very obvious tensions" between Cruz and Ghani. Cruz was concerned that Ghani was manipulating control of the partnerships, running both as one and moving money back and forth. He also was concerned about Ghani's treatment of the partnerships' other limited partners and complained he could no longer tolerate Ghani's "despotism." Cruz told Taba that he and some of the other NDMI limited partner-investors were discussing the possibility of legal action against Ghani, and Taba tried to talk him out of it. Two former employees claimed Ghani was looking for a way to exclude Cruz from the partnerships.

During this same time, NDMI partnership distributions stopped. Ghani told Cruz that NDMI's business was failing. He told Cruz there "were not enough scans coming in, not a lot of business, reimbursements were going down, referrals were down," and "if we continue on this path, we may go broke." At trial, Ghani explained the issues: the office-space lease was expiring and would have to be renewed for a five-year-period; the MRI machine was nearing the end of its recommended life; three of the key referring physicians were relocating and wanted to redeem their partnership shares; the inability to bring other physicians into the office space; and declining insurance reimbursement rates. Nevertheless, Ghani acknowledged NDMI was "making as much or more money than it had ever made before."

On December 5, 2008, Cruz and Ghani, acting as directors of NDMI's general partner, adopted a resolution to wind up NDMI and to authorize Ghani to oversee the dissolution. Cruz signed the minutes of the meeting as secretary. That same day, acting as NDMI partners, they signed a consent to dissolution. At some point, Cruz met with Ghani and suggested they bring in Reza Nabavi and his 20+ clinics as new referrals. Ghani told Cruz it was too late because he had already committed the machines to a new buyer. NDMI was ultimately shut down in April 2010.

In April or May, Cruz saw the MRI machines being removed from the NDMI offices. He noticed that Nabavi was present. Cruz then learned that Ghani and Nabavi had formed a new business, Mesquite AMI, and the NDMI machines were being sold to Mesquite AMI. Ghani and Nabavi created Mesquite AMI in December 2008, the same time Ghani was dissolving NDMI. Further, Cruz testified that during the course of this litigation, he learned the 2008 net income reported for NDMI was $403,530 with $279,000 paid out in partner distributions, and the 2009 net income reported for NDMI was $593,916 with only $50,000 paid out in partner distributions.

## D. Usurpation of Corporate Opportunity

In addition to allegations that Ghani mismanaged the partnerships and engaged in self-dealing, Cruz also complained that Ghani breached his fiduciary duties by usurping a corporate opportunity when he opened a competing business. In July 2008, a letter signed by Ghani and Taba was sent to the shareholders of GMI, the corporate general partner of Plano AMI. The letter addressed GMI shareholders investing in similar ventures and gave permission to GMI shareholders to pursue similar ventures. Cruz testified he never received the letter nor was it discussed with him. He had, however, discussed with Ghani purchasing an open MRI machine as an addition to Plano AMI. Cruz learned shortly after the date of the letter that Ghani and Taba had purchased an open MRI machine and opened two new business ventures: GMI#2 as a corporation and Plano Open MRI, an open-style MRI center located across the parking lot from Plano AMI.

## E. Redemption of Cruz's Shares in GMI

In August 2009, Debra Brown, one of NDMI's limited partners, sued NDMI, Ghani, Cruz, Taba, and others for breach of contract, breach of fiduciary duty, and other claims. Cruz filed a cross-claim against Ghani and the other appellants, and appellants then cross-claimed against Cruz alleging, among other things, that Cruz provided Brown's lawyer with confidential

information regarding NDMI's trial strategy and confidential financial information. Ultimately, Brown settled her causes of action, and the pending cross-claims were severed into this suit.

After Cruz filed his cross-claim, Ghani called a special meeting of the GMI shareholders. Cruz attended the meeting with his attorney. The purpose of the special meeting was to redeem Cruz's shares of GMI under the corporate protection or "bad boy" provision of GMI's bylaws, similar to the vehicle Ghani and Cruz used to oust Mendez from MCG and NDMI. Cruz's signature was not on the version of the GMI bylaws used to redeem his shares, and Cruz testified he had never seen the GMI bylaws that contained the redemption provisions. Although the bylaws recite they were adopted at the organizational meeting when GMI was created in March 2004, Taba testified he did not sign the GMI bylaws containing the "expulsion provision" until October 2008. The contested GMI bylaws provide that when a shareholder's shares are redeemed, the shareholder is to be paid "book value" for the shares. Plano AMI was the sole asset of GMI. Plano AMI's accountant provided a financial statement showing the "book value" of Plano AMI was a negative amount; consequently, GMI advised Cruz he was not entitled to receive any compensation for his shares in GMI.

## F. The Trial and Appeal

At trial, Cruz alleged four distinct injuries resulting from (1) Ghani's wrongful dissolution of NDMI, (2) appellants' payments to themselves and Ghani's wife, Rona, (3) appellants' usurpation of the Plano Open MRI corporate opportunity, and (4) appellants' theft of Cruz's ownership interests in Plano AMI. After hearing the evidence, the jury made findings in Cruz's favor on all of these claims and awarded actual and punitive damages.

On appeal, appellants bring multiple issues and sub-issues, generally challenging (1) the partial summary judgment ruling, (2) the damages awarded for conversion, (3) the damages awarded for breach of fiduciary duty in connection with the dissolution of NDMI, including the

trial court's directed verdict on appellant's affirmative defense of waiver, (4) the damages awarded for breaches of fiduciary duty in connection with the opening of Plano Open MRI, (5) the damages for self-dealing payments made to Ghani's wife and management company and payments made in connection with the Ault litigation, and (6) the award of punitive damages.  In a cross-appeal, Cruz brings two issues in which he complains the trial court erred by capping the punitive damage awards and by disregarding the jury's award of damages related to compensation paid to Taba.

## II. Instructed Verdict

We begin with the trial court's instructed verdict on appellants' affirmative defense of waiver.  As the close of the trial neared, Cruz filed a written motion for instructed verdict on Ghani's affirmative defense of waiver, arguing there was "no evidence" and/or factually insufficient evidence to support the issue's submission to the jury.  After testimony ended, the court granted the motion.

In Ghani's third issue, he argues the trial court's ruling was error as it related to the dissolution of NDMI.  Specifically, he contends, even if he breached his fiduciary duty, the jury should have been allowed to consider whether Cruz waived the breach because Cruz knowingly consented to the dissolution.  This issue pertains to question 12 of the jury charge, which stated:

> **QUESTION NO. 12:  With respect to the decision to wind up and dissolve NDMI, did Mehrdad Ghani fail to comply with his fiduciary duties to NDMI and Erwin Cruz?**
>
> Because Ghani was an NDMI partner and controlled the day-to-day activities of NDMI, Ghani owed NDMI and Erwin Cruz a fiduciary duty.  To prove Ghani failed to comply with this duty, Cruz must show:
>
> a.  the transaction in question was not fair and equitable to NDMI and Erwin Cruz;
> b. Ghani did not make reasonable use of the confidence that NDMI and Erwin Cruz placed in him;
> c.  Ghani did not act in the utmost good faith and exercise the most scrupulous honesty toward NDMI and Erwin Cruz;

d. Ghani placed his own interests before the interests of NDMI and Erwin Cruz [sic] used the advantage of his position to gain a benefit for himself at the expense of NDMI or Erwin Cruz, and placed himself in any position where his self-interest might conflict with his obligation as a fiduciary to NDMI and Erwin Cruz; or

e. Ghani did not fully and fairly disclose all important information to NDMI and Erwin Cruz concerning the transaction.

The jury answered "yes" to Question 12 and determined $922,265 would reasonably compensate Cruz for his damages proximately caused by Ghani's failure to comply with his fiduciary duty.

Generally, an instructed verdict is proper when the opponent's pleadings are defective and insufficient to support a judgment, when the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law, or when the evidence offered on a cause of action is insufficient to raise a fact issue. *Spangler v. Jones*, 797 S.W.2d 125, 129–30 (Tex. App.—Dallas 1990, writ denied). When we review the trial court's grant of an instructed verdict on an evidentiary basis, we determine whether there is more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004). We consider the evidence in the light most favorable to the party against whom the directed verdict was instructed and give the losing party the benefit of all reasonable inferences created by the evidence. *Id.* at 234. If there is any conflicting evidence of probative value, we must reverse and remand the issue for the jury's determination. *Id.*

Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 333–334 (Tex. App.—Dallas 2011, no pet.). The elements of waiver are: (1) an existing right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right

(which can be inferred from conduct). *Furmanite*, 339 S.W.3d at 334. Waiver can be established by a party's express renunciation of a known right, by its conduct, or by silence or inaction over a period of time long enough to show an intention to yield the known right. *Comiskey v. FH Partners, LLC*, 373 S.W.3d 620, 639 (Tex. App.—Houston [14th Dist.] 2012, pet. denied).

Ghani argues Cruz engaged in intentional conduct that relinquished, and was inconsistent with, any right he might have had to avoid dissolution. He asserts that if the jury had been allowed to consider his waiver defense in light of the evidence presented, the jury may have found Cruz waived any breach of fiduciary duty because he knowingly agreed to the dissolution.

As evidence, he relies on the following: (1) Cruz signed a consent authorizing the dissolution, (2) Cruz signed the meeting's minutes where NDMI's financial status and dissolution were discussed, (3) Cruz had knowledge of NDMI's financial demise, and (4) testimony that Cruz, in his own words, "went along with it." While we do not attempt to present all the evidence bearing upon the issue of waiver, we conclude the record presents a fact issue as to whether Cruz waived his right to complain about the dissolution of NDMI.

Ghani produced evidence that Cruz issued the notice and call of a special meeting of MCG Group, NDMI's corporate general partner, on November 13, 2008. The purpose of the special meeting was "to determined [sic] whether or not there should be a dissolution winding up and termination of the limited partnership of which this Corporation is the general partner, and the manner in which same shall be performed." Cruz signed the notice as director of MCG Group. In addition, the evidence included the minutes of a December 5, 2008 special meeting of MCG Group. The minutes, signed by Cruz, resolved that (1) NDMI should be dissolved, its business affairs and operations be wound up, and the partnership terminated and (2) election and recommendation of the general partner to adopt same be presented to the limited partners and

their decision be recorded. The minutes then provided that a motion was made, seconded, and "unanimously carried" to authorize the means and manner of such dissolution and then resolved that Ghani, as president of MCG Group, should "be instructed and authorized to oversee and effectuate said dissolution, handle the affairs and decision making of winding up the affairs of the limited partnership's business, selling its assets, paying its debts, distributing its remaining assets, if any, to the partners, and terminating the limited partnership."

In addition, Ghani also produced evidence suggesting Cruz had knowledge that NDMI could not survive in the long term. In a September 4, 2008 email to a physician-investor, Cruz attaches an article concerning "[h]ow outpatient imaging centers are coping" after legislation reduced reimbursements for Medicare patients. Cruz asked the physician-investor to review the article, noting that it "definitely creates some challenges for us[.]" Also, Cruz testified Ghani told him reimbursement rates and referrals were declining and NDMI was losing three of the physician-investors who had made referrals to the centers. At the same time, Cruz declined Ghani's suggestion that he relocate his office to a smaller area in the same building to allow new physician-referral sources to move in to his space. Finally, evidence showed Cruz had possession of the Quickbooks files containing the NDMI financial records.

We conclude that more than a scintilla of probative evidence shows Cruz actively participated in the decision to dissolve NDMI, with knowledge of facts concerning the challenges facing outpatient imaging centers, and this evidence raised material fact issues regarding whether Cruz intentionally relinquished a known right or acted inconsistent with claiming that right.

In reaching this conclusion, we have considered Cruz's argument on appeal that whether Cruz's "consent" constituted a waiver was "not a dispositive inquiry" and did not support submission of an independent affirmative defense. He argues that "the facts concerning Cruz's

–11–

consent . . . were properly considered by the Jury in determining whether the transaction was 'fair.'"

Cruz did not advocate the granting of the motion on this basis in the trial court; rather, he argued legal sufficiency. Regardless, we are unpersuaded. To support his argument, Cruz cites two cases, neither of which involved, analyzed, or discussed the propriety of the affirmative defense of waiver in the context of a breach of fiduciary duty. *See Stephens Cnty. Museum v. Swenson*, 517 S.W.2d 257 (Tex. 1974) and *Tex. Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980). Whether *consent* is a separate material issue in a fiduciary duty case is not the same question as whether *waiver* may be separately submitted. Because we conclude more than a scintilla of probative evidence exists on Ghani's affirmative defense of waiver, the trial court erred in granting an instructed verdict on this issue.

Having so concluded, we must determine whether the error probably caused the rendition of an improper judgment. Here, the trial court's ruling precluded the jury from considering whether Cruz's actions waived any breach of fiduciary duty related to NDMI's dissolution. Because there was some evidence presented from which the jury could have determined the breach was waived and therefore appellants were not liable, we conclude the error was harmful. We sustain the third issue.

III. SUMMARY JUDGMENT

In their first issue, appellants contend the trial court erred by granting Cruz's traditional motion for partial summary judgment because Cruz did not prove as a matter of law that he was a limited partner in Plano AMI. We agree.

To prevail on a traditional summary judgment motion, a party must show that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Evidence favorable to

–12–

the nonmovant will be taken as true with every reasonable inference, and any doubts, resolved in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). If the movant meets his burden of proof, then and only then must the nonmovant respond with reasons to avoid summary judgment and proof sufficient to raise a fact issue. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999); *see also Gambrinus Co. v. Galveston Beverage, Ltd.,* 264 S.W.3d 283, 288 (Tex. App.—San Antonio 2008, pet. denied). When, as here, the trial court's order does not specify the grounds for summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

Cruz moved for summary judgment on the grounds that (1) appellants were barred by "tax estoppel" or "quasi estoppel" from contending they are not limited partners in Plano AMI and (2) the plain language of the partnership agreement should be harmonized as a matter of law to mean they were limited partners. In his motion, Cruz asserted that as a "prerequisite to certain claims," he needed to establish he is a limited partner of Plano AMI. He then asserted that although he, Ghani, and Taba had signed the partnership agreement as "limited partners," Ghani and Taba had taken the position in depositions that they never intended to be partners. Relying on Plano AMI's original tax return, Cruz asserted they each owned 24% as limited partners and GMI owned 1%.

In response, appellants argued they never intended to be and never were limited partners in Plano AMI. Rather, they asserted they were one-third shareholders in Plano AMI's general partner, GMI. Further, they argued, the partnership agreement expressly granted to GMI a 60% ownership interest, and they mistakenly signed the agreement as limited partners. Finally, they

argued they asserted the tax returns upon which Cruz relies for his estoppel argument have been amended to reflect their status as GMI shareholders.

We begin with Cruz's second ground for summary judgment in which he contends the agreement itself establishes that he is a limited partner. We construe a written agreement to ascertain and give effect to the true intentions of the parties as expressed in the writing itself. *El Paso Field Servs., LP v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012); *Innovate v. Tech. Solutions, L.P. v. Youngsoft, Inc.*, 418 S.W.3d 148, 151 (Tex. App.—Dallas 2013, no pet.). We attempt to harmonize and give effect to all provisions of the writing by analyzing the provisions with reference to the whole agreement. *Frost Nat. Bank v. L & F Distribs., Ltd.,* 165 S.W.3d 310, 312 (Tex. 2005); *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Assn.*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet. denied).

Whether a contract is ambiguous is a question of law. *Innovate*, 418 S.W.3d at 151. We begin our analysis with the agreement's express language. *El Paso Field Servs.*, 389 S.W.3d at 805–06. If we are unable to harmonize the provisions and give effect to all the contract's clauses, the contract is susceptible to more than one reasonable interpretation and is ambiguous. *Innovate*, 418 S.W.3d at 151. If a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the intent of the contracting parties is an issue of fact. *Id.*

Cruz attached a copy of the partnership agreement to his motion for partial summary judgment. He relies on the signature page of the agreement, where Ghani signed as president of GMI under the heading "<u>GENERAL PARTNER</u>" and Cruz, Ghani, and Taba each individually signed under the heading "<u>LIMITED PARTNERS</u>." He argues his signature established as a matter of law his status as a limited partner.

Appellants, however, argue other portions of the agreement create an ambiguity as to Cruz's status. Specifically, page one of the agreement provides as follows:

THIS AMENDED AND RESTATED AGREEMENT OF LIMITED PARTNERSHIP is made and entered into and shall be effective as of the _1_ day of April, 2004, by and among GHANI MEDICAL INVESTMENTS, INC., a Texas corporation (the "General Partner"), and each other Person whose name is set forth on Exhibit A attached to this Agreement, as the Limited Partners.

**WITNESSETH:**

WHEREAS, GHANI MEDICAL INVESTMENTS, INC., as the General Partner and Mehrdad Ghani as the original limited partner (the "Original Limited Partner") formed Plano AMI, L.P., a Texas limited partnership (the "Partnership"), and are parties to that certain Agreement of Limited Partnership of Plano AMI, L.P., dated as of March 18, 2004 (the "Original Partnership Agreement");

WHEREAS, the General Partner and the Original Limited Partner have decided to admit those Persons names [sic] on Exhibit A to the Partnership as additional Limited Partners; and

WHEREAS, in connection with amending the Original Partnership Agreement to reflect the admission to the Partnership of the Persons named on Exhibit A as additional Limited Partners, the General Partner and the Persons admitted as Limited Partners have decided that it would be appropriate to amend and restate the Original Partnership Agreement, in its entirety.

The referenced Exhibit A lists GMI as "General Partner" with 60% interest, followed by Ghani's name as "Limited Partner" with a blank line beside his interest. No other limited partners are named. Considering the first-page provisions in conjunction with each other and with Exhibit A, we conclude the signature page of the agreement does not conclusively establish that Cruz is a limited partner. To the contrary, Cruz's name is not on Exhibit A, which was intended to show the names of the limited partners.

Cruz nevertheless argues we can harmonize the agreement in spite of Exhibit A. First, he contends the exhibit is incomplete and leaves room for additional unnamed partners and we should use his and Taba's signatures to "fill out the incomplete roster." But, "[a] court may not

add to a contract under the guise of interpretation." *Gamma Group, Inc. v. Transatlantic Reinsurance Co.*, 242 S.W.3d 203, 212 (Tex. App.—Dallas 2007, pet. denied).

Cruz next argues we can harmonize the agreement by recognizing "the general partner is given broad discretion to forego the use of the Exhibits altogether." For this, he relies on sections 12.6(b) and (d) of the agreement, which authorize the general partner to amend any provision of the agreement without the consent of, or notice to, any limited partner. This argument, however, depends on Cruz's position that the written agreement itself unambiguously named him a limited partner. Having reviewed the summary judgment evidence, we conclude the agreement is ambiguous and its meaning a determination for the fact finder.

In the first summary judgment ground, Cruz asserted appellants were barred from denying he is a limited partner by the doctrine of tax estoppel or quasi-estoppel. Quasi-estoppel precludes a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit. *Id.*

In his motion, Cruz asserted appellants are barred from taking a position inconsistent with tax returns, filed from 2004 to 2009, showing that Cruz, Ghani, and Taba were limited partners in Plano AMI and GMI owned only a 1% general partner interest. Relying on *Davidson v. Davidson*, 947 F.2d 1294, 1297 (5th Cir. 1991), Cruz asserted that "tax estoppel" is a species of quasi-estoppel and applies when a party makes sworn factual representations to the Internal Revenue Service.

In *Davidson*, the bankruptcy court determined that the husband and wife had intended periodic payments to be a property settlement, rather than alimony, and therefore determined the periodic payment debt was dischargeable in bankruptcy. *Id.* at 1296. The bankruptcy court also

determined the husband was not barred by the doctrine of equitable estoppel from asserting the payments were not alimony. *Id.* On appeal, the Fifth Circuit reversed, explaining that the debtor had declared the debt as alimony in his tax returns and could not take a different position in bankruptcy. *Id*. at 1296–97. Nothing in the opinion suggests the debtor had amended his returns to reclassify the debt payments as property settlement payments.

Here, appellants presented evidence that the tax returns for Plano AMI and GMI had been amended to reflect that Ghani, Taba, and Cruz are shareholders of GMI, the general partner of Plano AMI, and have 0% interest as limited partners. The acceptance of an amended return is a matter of IRS discretion. *See Dover Corp. & Subsidiaries v. C.I.R.*, 148 F.3d 70, 72 (2d Cir. 1998). There is nothing in the record to indicate the IRS rejected the amended returns. In addition, Hossein Zamanian, the accountant who filed both the original and amended returns for Plano AMI and GMI, testified that before filing the amended returns, he called the IRS and was told that if anything was "wrong on the tax return for any reason, [it] need[s] to be corrected." Finally, Cruz did not present evidence to establish that appellants benefitted in any way from being characterized as "limited partners" for tax purposes.

For purposes of this appeal, we need not decide the ownership structure of Plano AMI, who the limited partners are, or the percentages assigned to their interest. We need only decide whether Cruz established as a matter of law that he is one of the limited partners. Having reviewed the summary judgment evidence, we conclude he has not. Accordingly, the trial court erred in determining otherwise.

Having concluded the partial summary judgment was error, we now consider its impact on the trial and the jury and the appropriate disposition of this case.

"Appellate courts have broad discretion to remand a case for a new trial in the interest of justice." *Innovate*, 418 S.W.3d at 153 (citing *Knapp v. Wilson N. Jones Mem'l Hosp.*, 281

S.W.3d 163, 176 (Tex. App.—Dallas 2009, no pet.) (citing TEX. R. APP. P. 43.3(b)); *Scott Bader, Inc. v. Sandstone Prods., Inc.,* 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Ahmed v. Ahmed*, 261 S.W.3d 190, 196 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Remand is appropriate when, for any reason, a case has not been fully developed, including where the trial court's action prevented the case from being properly developed and presented at trial. *Innovate*, 418 S.W.3d at 153; *Ahmed*, 261 S.W.3d at 196 ("As long as there is a probability that a case has, for any reason, not been fully developed, an appellate court has discretion to remand for a new trial rather than render a decision.").

Almost from the outset of the trial, the jury was told that Cruz was a limited partner in Plano AMI. Specifically, on the second day of testimony, during appellants' cross-examination of Cruz, the trial court instructed the jury as follows:

> Ladies and gentlemen, I think it's time for me to explain something to you.
>
> As [Cruz's attorney] stated to you in his opening statement yesterday, at some point in time in 2009 or 2010 Mr. Hossein Zamanian prepared amended tax returns for the Plano AMI limited partnership which purported to reflect that Dr. Cruz had never been a limited partner of that entity.
>
> The Court, in a pretrial ruling, held that it is not legally permissible to try to change reality by amending tax returns in that fashion long after the fact and when litigation is already pending.
>
> And so the Court rendered what is called a summary judgment stating Dr. Cruz had been and still is a limited partner in Plano AMI.
>
> That was done over the vigorous resistance of the defendants, and it is inappropriate for [appellants' counsel] to seek to confuse or mislead you by suggesting that the defendants had not tried to eliminate Dr. Cruz's limited partnership interest. You are so instructed.
>
> And, [appellants' counsel], you will move on.

The charge contained twenty-two questions that can be grouped as follows: (1) the conversion of Cruz's partnership interest in Plano AMI; (2) the dissolution of NDMI; (3) usurpation of the Plano AMI corporate opportunity by opening Plano Open MRI, LP; (4) self-

–18–

dealing by Ghani by making payments to his wife and the Ault litigation from either NDMI or Plano AMI funds. We have resolved the issues related to the dissolution of NDMI. In the remaining issues, however, most of questions either instructed the jury Cruz was a limited partner in Plano AMI or relied on a question that so instructed. Further, the additional charge of the court, given to the jury to determine punitive damages, was predicated on these answers. Considering the judge's oral instruction and the jury charge, we are convinced the pretrial ruling infected the entire trial. It impacted the appellants' cross-examination of witnesses, the presentation of their case, and, most importantly, what evidence they could present. In the absence of the pretrial ruling, the jury would have been asked to decide additional issues that were material to the claims brought by Cruz.

For the above reasons, we conclude the appropriate disposition in this case is to remand the entire cause for further proceedings consistent with this opinion; therefore, we do not address appellants' remaining issues.[2] Likewise, our disposition makes it unnecessary to address the issues raised by Cruz in his cross-appeal.

We reverse the trial court's judgment and remand for further proceedings consistent with the opinion.

121480F.P05

/Molly Francis/
MOLLY FRANCIS
JUSTICE

---

[2] We note that appellants brought legal sufficiency challenges to the damages awarded for conversion and the NDMI dissolution, arguing there is no evidence because the trial court submitted the wrong measure of damages. They seek rendition of a take-nothing judgment on these claims. We do not reach these issues because they would not require rendition of the judgment in appellants' favor; rather, when the charge fails to instruct the jury on the proper measure of damages but there is some evidence of damages, remand is the appropriate disposition. *See Formosa Plastics Corp. v. Presidio Eng'rs & Contractor's, Inc.*, 960 S.W.2d 41, 51 (Tex. 1998); *JAAV Investments, LLC v. Amcap Mortgage, Ltd.*, No. 14-12-00839-CV, 2014 WL 708492, at *7 (Tex. App.—Houston [14th Dist.] Feb. 20, 2014, no pet.) (substitute mem. op.). Here, our review of the record reveals some evidence of damages.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

PLANO AMI, L.P., GHANI MEDICAL
INVESTMENTS, INC., MCG GROUP,
INC., MEHRDAD GHANI, NORTH
DALLAS MEDICAL IMAGING, L.P.,
AND MICHAEL TABA, M.D.,
Appellants/Cross-Appellees

No. 05-12-01480-CV      V.

ERWIN CRUZ, M.D., Appellee/Cross-
Appellant

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 10-16274-E.
Opinion delivered by Justice Francis with
Justice Lang-Miers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent
with this opinion.

It is **ORDERED** that appellants Plano AMI, L.P., Ghani Medical Investments, Inc.,
MCG Group, Inc., Mehrdad Ghani, North Dallas Medical Imaging, L.P., and Michael Taba,
M.D., recover their costs of this appeal from appellee Erwin Cruz, M.D. The obligations of
Liberty Mutual Insurance Company as surety on appellant Michael Taba's supersedeas bond are
**DISCHARGED**.

Judgment entered January 9, 2015.